# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **MARK H.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **NANCY A. BERRYHILL,** <br> **Deputy Commissioner for Operations** <br> **performing the duties and functions** <br> **not reserved to the Commissioner of** <br> **Social Security,** <br><br> **Defendant.** | Case No. 17-2105 |

## REPORT AND RECOMMENDATION

Plaintiff Mark H. seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability insurance benefits. The parties filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#10)** be **DENIED**, Defendant's Motion for Summary Judgment **(#13)** be **GRANTED**, and the decision to deny benefits be affirmed.

**I.    Background**

On July 18, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability beginning April 28, 2012. Plaintiff was last insured June 30, 2012. Therefore, Plaintiff's relevant period of alleged disability was from April 28, 2012 to June 30, 2012.

The Social Security Administration denied Plaintiff's claims initially and on reconsideration. Plaintiff appeared and testified at a video hearing before an Administrative Law Judge (ALJ). During the hearing, the ALJ heard testimony from impartial vocational and medical experts.

On October 9, 2015, the ALJ issued an unfavorable decision. (R. 20-28.) The ALJ found that Plaintiff has the severe impairments of degenerative disc disease and anxiety disorder. (R. 21.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404,1520(d), 404.1525 and 404.1526). Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is limited to occasional interaction with supervisors and coworkers, and to no interaction with the public.

(R. 23.) The ALJ found that through the date last insured, Plaintiff was unable to perform his past relevant work as an auto mechanic, but that there were jobs that exist in significant numbers that Plaintiff could perform. (R.27.)

II.   **Standard of Review**

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III.   Analysis

#### a.  Residual Functional Capacity

Plaintiff argues that the ALJ's RFC assessment was flawed as it failed to account for Plaintiff's need for a cane and his fatigue and resulting need to nap. "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Id.*

The ALJ recognized that Plaintiff "uses a cane at times for balance because his left leg goes out and he would fall a couple times a week." (R. 24; *see also* R. 48, 54.)) The ALJ also noted that Plaintiff "reported that he tries to limit himself so that he does not have to use the cane too much." (R. 24; *see also* R. 54.) Plaintiff testified that he used the cane a couple of times a week. (R. 54.)

The Regulations provide that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p. The record does not include any "medical documentation establishing the need" for Plaintiff's cane use. All references in the medical record of Plaintiff's use of a cane come from Plaintiff's self-reports. (R. 79, 461). On September 2, 2013, Plaintiff's son reported that Plaintiff did not use a cane. (R. 341.) On the same date, Plaintiff did not check the box asking if he used a cane, indicating that he did not use a cane on his own function report. (R. 365.)

The ALJ properly did not account for the cane in Plaintiff's RFC, as it was not medically required as defined by SSR 96-9p.

Second, Plaintiff argues that the ALJ failed to account for Plaintiff's need to nap during the day. The ALJ recognized that Plaintiff napped some days and had sleeping difficulties. (R. 24; *see also* R. 55.) Plaintiff also testified that he feels alert and awake when he is not napping. (R. 56.) Plaintiff was asked to describe any problems he had with fatigue on his function report, and while he discussed problems with preparing meals,

he did not list any issues resulting from fatigue. (R. 367.) No medical professional opined that Plaintiff needed to nap during the day. Plaintiff has not shown that the ALJ erred in excluding any need for naps in the RFC.

The ALJ's RFC assessment was supported by substantial evidence. There was no reversible error.

### b. Medical Opinion Evidence

Second, Plaintiff contends that the ALJ improperly weighed the medical opinion evidence. According to Plaintiff, the ALJ erred in rejecting treating physician Dr. Thomas's opinion.

The ALJ must give controlling weight to a treating source's opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F. 3d 704, 710 (7th Cir. 2011) (citing § 404.1527(c)). An ALJ may choose not to give a treating physician's opinion controlling weight if it is inconsistent with the consulting physician's opinion or if it is internally inconsistent. *Skarbek v. Barnhart*, 390 F. 3d 500, 503 (7th Cir. 2004).

Dr. Thomas issued two opinions as to Plaintiff's mental limitations: one in August 2010 and one in February 2011. On August 8, 2010, Dr. Thomas wrote a note recommending that Plaintiff take a leave of absence for one year "to deal with his issues." (R. 527.)

Then, on February 8, 2011, Dr. Thomas opined that Plaintiff would miss work more than three times per month due to his limitations. (R. 535.) He found Plaintiff was incapable of even low stress work and that he had marked limitations in nearly every category of limitations. (R. 530-34) (listing marked limitations in the ability to remember locations and work-like procedures; to carry out detailed instructions; maintain attention and concentration for extended period; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain ordinary routine without supervision;  work in coordination with or proximity to others without being distracted by them; complete a normal workweek; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond

4

appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently.)

First, the ALJ noted that both opinions were given well before Plaintiff's alleged onset date of April 28, 2012, and gave little weight to the opinions. The ALJ found that the August 8, 2010 note was conclusory with little explanation included. (R. 26.) Additionally, the note suggested that Plaintiff would be able to return to work after the one-year period. (R. 26.) Further, there were no treatment notes by Dr. Thomas supporting his February 2011 opinion. Plaintiff argues it was the ALJ's duty to contact Dr. Thomas to obtain records to support his opinion. Plaintiff was represented by an attorney and there was no reason for the ALJ to believe that the evidence received was inadequate. *See Skarbek*, 390 F.3d at 503 ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled.") Finally, the ALJ concluded that the other medical evidence provided did not support the significant limitations opined by Dr. Thomas. (R. 26.) The ALJ gave good reason for giving Dr. Thomas's opinion little weight. He complied with the regulatory factors, and his decision was supported by the record.

c. Mental Impairments

Third, Plaintiff argues the ALJ erred in assessing the severity of Plaintiff's mental impairments because the ALJ did not rely on any psychiatric or psychological evidence. To note, the ALJ found that Plaintiff's anxiety disorder was a severe impairment and limited Plaintiff to occasional interaction with supervisors and coworkers and to no interaction with the public. Plaintiff argues, though, that the ALJ was required to have Plaintiff undergo a consultative psychiatric examination.

The Regulations provide a special technique for evaluating mental impairments. "The special technique requires that the ALJ evaluate the claimant's 'pertinent symptoms,

5

signs, and laboratory findings' to determine whether the claimant has a medically determinable mental impairment." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 CFR § 404.1520a(b)(1). "If the claimant has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. citing § 404.1520a(c)(3).

Here, the ALJ followed the special technique and specifically discussed Plaintiff's limitations as to activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. (R. 21-22.) The ALJ considered that Plaintiff received no treatment during the relevant period of time. (R. 25.) The ALJ considered and evaluated the opinions issued before and after the relevant time period. The ALJ also gave great weight to the opinions from the state agency psychologists, Drs. Mehr and Fyans. Finally, the ALJ considered the opinions of the medical expert, Dr. Rolston who reviewed the entire record and found that Plaintiff was capable of light work with the limitations listed in the RFC. (R. 26.)

Plaintiff's argument that the ALJ's analysis was not based on any psychiatric or psychological evidence is without support. The Court does not find reversible error.

### d.  Subjective Symptom Analysis

Finally, Plaintiff argues that the ALJ failed to analyze the credibility of Plaintiff's allegations "with a level of detail that was sufficient to allow the Court to conduct meaningful judicial review." The Social Security Administration recently replaced the former SSR 96-7p with SSR 16-3p to remove the term credibility. However, footnote 27 to SSR 16-3p clarifies that it applies only to decisions issued on or after Mach 28, 2016. The ALJ's decision was issued on October 9, 2015, and therefore SSR 96-7p applies. The Court will consider Plaintiff's argument as to credibility under SSR 96-7p.

Under SSR 96-7p, "in determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other

persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." But, "this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek,* 390 F. 3d at 504-05 (7th Cir. 2004.) The Court will affirm the ALJ's credibility finding so long as the ALJ "gives specific reasons that are supported by the record." *Id.* at 505.

Plaintiff argues that the ALJ erred in finding Plaintiff's subjective allegations concerning his pain and symptoms were inconsistent with the evidence of Plaintiff's daily activities. The ALJ did not make this finding. The ALJ considered Plaintiff's reported daily activities as directed by the Regulations. 20 C.F.R. § 404.1529(c)(3)(i). In this consideration, the ALJ noted that Plaintiff "testified to significantly limited activities of daily living" at the hearing. During that hearing, Plaintiff testified that he was unable to perform any chores around the house. (R. 50.) Plaintiff further stated that he was able to dress himself, eat, watch television, and play computer games, but that he was not able to shop or do errands. (R. 50-51.)

The ALJ contrasted this testimony with Plaintiff's statement during a consultative examination from October 2013 that he could perform activities of daily living. (R. 451.) So, consistent with the Regulations, the ALJ considered Plaintiff's reported activities, contrasted this with Plaintiff's earlier statement that he was able to perform daily activities, and then relied on other objective evidence to find Plaintiff's statements lacked credibility.

Plaintiff also contends that the ALJ erred in finding that Plaintiff's subjective allegations were inconsistent with evidence based on his treatment record. It was nonetheless reasonable for the ALJ to consider the absence of treatment during his alleged disability period. Plaintiff has the burden to provide evidence of his disability. 20 CFR § 404.1512(a) ("[Y]ou have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.")

Last, Plaintiff maintains that the ALJ erred in rejecting evidence provided by Plaintiff's former employer, Mr. Sims. The ALJ acknowledged Mr. Sims' letter, but gave

7

it little weight. (R. 27.) Plaintiff's employer was not an acceptable medical source, and the ALJ reasonably discounted his opinion. *See e.g. Arnold v. Barnhart*, 473 F.3d 716, 821-22 (finding that four neighbors who were not health care professionals were not competent to refute professional medical testimony). There was no error.

The ALJ's credibility analysis was not patently wrong. While Plaintiff may disagree with the result, the Court upholds the ALJ's decision.

## IV. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#10)** be **DENIED**, Defendant's Motion for Summary Judgment **(#13)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 22nd day of August, 2018.

                                               s/ ERIC I. LONG
                                          UNITED STATES MAGISTRATE JUDGE